UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT PIKEVILLE

CIVIL ACTION NO. 04-236-DLB

NATASHA ADAMS                                                                                          PLAINTIFF

vs.                              **MEMORANDUM OPINION & ORDER**

JO ANNE B. BARNHART, Commissioner
SOCIAL SECURITY ADMINISTRATION                                                       DEFENDANT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Natasha Adams filed her current application for Supplemental Security Income (SSI) on November 16, 2001. Plaintiff previously had been receiving benefits, which were ceased in June of 1997. She appealed that cessation, but after administrative hearing was again denied benefits on November 17, 1998, with the Appeals Council denying further review. She filed another application on July 27, 2000. That application also proceeded through administrative hearing with a decision denying benefits issued October 26, 2001. The Appeals Council also denied further review on that claim.

Plaintiff, who was 22 years old at the time of the hearing, has a high school education. With this most recent application, she alleges a disability onset date of

November 11, 2001, due to depression, anxiety, a learning disorder, headaches, and breathing problems. Her application was denied initially and on reconsideration. Plaintiff then requested a hearing before an administrative law judge, which hearing was held on September 5, 2001, in Prestonsburg, Kentucky. The ALJ ruled that Plaintiff was not under a disability and was not eligible for SSI payments. This decision was approved by the Appeals Council on February 6, 2004.

The instant action was filed on June 10, 2004. It has now culminated in cross motions for summary judgment.

## II. DISCUSSION

### A.  Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments, or combination thereof, are "severe"; Step 3, whether the

impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. (Tr. 16). At Steps 2 and 3, the ALJ found that Plaintiff has medical impairments of depressive and anxiety disorders, borderline intellectual functioning, migraine headaches, and mild restrictive pulmonary disease that constituted severe impairments. (Tr. 17)  The ALJ concluded, however, that Plaintiff does not have an impairment or combination of impairments that meet or medically equal any listed impairment found in Appendix 1 to Subpart P of Regulations No. 4. (Tr. 17)

At Step 4, the ALJ found there had been no showing Plaintiff limitations had improved since the prior ALJ's decision and so adopted those limits. Specifically, the ALJ found Plaintiff had the residual functional capacity (RFC) to perform medium level work, but also found Plaintiff to have nonexertional limitations of never climbing ladders or working/balancing at unprotected heights; performing no work in the vicinity of hazardous moving or dangerous unguarded machinery; avoiding all exposure to excessive air pollutants, pulmonary irritants and allergens; performing no commercial driving or operation of mobile equipment or otherwise being exposed to jars, jolts, jostling; has marginal literacy and math ability; is moderately limited in her ability to understand and remember and carry

out detailed instructions, interact appropriately with the general public, get along with coworkers or peers without distracting them or exhibiting behavioral extremes and respond appropriately to changes in the work setting; and a fair to poor ability to concentrate, but can perform routine jobs without significant public contact. (Tr. 19)

Plaintiff had no past relevant work for consideration by the ALJ based upon his RFC determination. (Tr. 20) The ALJ therefore proceeded to the final step of the sequential evaluation. At Step 5, the ALJ found there are jobs existing in significant numbers in the national economy that she could perform, including material handler and hand packer at the medium unskilled level, laundry worker and kitchen worker at the light unskilled level, and small parts assembler and hand packer at the sedentary unskilled level. (Tr. 20) This conclusion resulted from vocational expert (VE) testimony, in response to hypothetical questions involving a person of Plaintiff's age, education, and RFC. (Tr. 348-50)

**C.     Analysis**

Plaintiff raises one challenge in her appeal. She argues that the ALJ's decision was not supported by substantial evidence because the ALJ "erred by acting as his own medical expert." (Doc. #9, p.3) This, Plaintiff submits, is evidenced by the fact that the two state agency non-examining mental reviewers were not provided with the more recent treatment records from Mountain Comprehensive Care Center (MCCC); instead, the ALJ reviewed these records himself. This contention fails to constitute reversible error, for at least two reasons. One, that the state consultants did not have the most recent records is not error, because the ALJ did not adopt the opinions of those consultants. Two, that the ALJ evaluated these records himself is not error, because it is the function of the ALJ to evaluate all evidence, including such medical treatment records.

4

At the time of the application which is the subject of this claim, Plaintiff had been receiving ongoing mental health treatment with MCCC. The record contains treatment documentation for Plaintiff with MCCC from as early as January 1999 through October 2002. (Tr. 232-96, 305-14) There were two agency non-examining mental reviewers for this claim – Dr. Lea Perritt, whose review took place on January 14, 2002 (tr. 192-205) and Dr. Jane Brake, whose review took place on March 13, 2002 (tr. 217-230). Plaintiff notes that both Dr. Perritt and Dr. Brake had MCCC records through only December 2001, inferring their opinions and conclusions would have been different had the more recent records been supplied to them.

This argument is misplaced, because the ALJ did not adopt their opinions in the first place. Neither Dr. Perritt nor Dr. Brake found the Plaintiff to have either anxiety or depressive disorders (tr. 192, 217), and in assessing Plaintiff's mental functional capacity, they noted moderate limitation in only two areas – her ability to understand and remember detailed instructions, and her ability to carry out detailed instructions (tr. 206, 212). The ALJ noted Plaintiff's mental impairments had been recently assessed in conjunction with a prior application, and that this prior assessment was more restrictive than the assessments by Drs. Perritt and Brake. Therefore, based upon *Drummond v. Commissioner of Social Security,* 126 F.3d 837 (6th Cir. 1997), and giving Plaintiff the benefit of the doubt, and after concluding the evidence in this application had not established any significant improvement in her mental impairments since the prior decision, the ALJ adopted the more limiting assessment from the October 26, 2001, ALJ decision. (Tr. 17, 19) That prior decision noted Plaintiff was found by MCCC to have a depressive disorder and generalized anxiety, which conditions had also been found by ALJ Chwalibog

5

to be severe impairments with this pending application. The consultative examiner, Dr. Phil Pack, and non-examining consultants Drs. Perritt and Brake, had not diagnosed these impairments. But in spite of these consultative opinions, ALJ Chwalibog instead adopted the prior more restrictive limitations based on Plaintiff's mental impairments:

> marginal literacy and marginal math ability; moderately limited ability to understand and remember detailed instructions, carry out detailed instructions, interact appropriately with the general public, get along with coworkers or peers without distracting them or exhibiting behavioral extremes and respond appropriately to changes in the work setting; and fair to poor ability to concentrate, but is able to perform routine jobs without significant public contact.

(Tr. 19) Therefore, providing the consulting medical experts with updated records was not necessary, as the ALJ did not utilize their opinions.

Plaintiff, however, takes issue with the notion that the supplemental notes from MCCC were reviewed by the ALJ and not a medical expert. "[I]t is the position of the Plaintiff that the [ALJ] acted as his own medical expert by apparently not [sic] finding that [MCCC] records did not result in more significant medical limitations than the mental limitations found by the prior [ALJ]." (Doc. #9, p.6) The gist of Plaintiff's argument is that it was impermissible for ALJ Chwalibog to review and assess these MCCC updates and that a medical expert should have been called upon to do so. This is an incorrect limitation on an ALJ's role and authority.

It is the function of an ALJ to evaluate a claim based upon the record compiled in connection with an application. This includes evaluating medical proof. *See* 20 C.F.R. §§ 416.920, 416.927; *Webb v. Commissioner of Social Security,* 368 F.3d 629, 633 (6th Cir. 2004 ("ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [ ] residual functional capacity")(internal

6

quotation omitted). ALJ Chwalibog's decision reflects he reviewed the MCCC records submitted in connection with this application. (Tr. 17, citing exhibits 11-F and 19-F) To support adopting the mental restrictions from the prior decision, he notes the records with this application fail to document Plaintiff's limitations have since improved nor, by inference, that they have worsened either. (Tr. 19) Contrary to Plaintiff's characterization, this is not "playing doctor" by the ALJ, but rather part of his role and function of evaluating medical proof so as to determine disability.

An ALJ is obligated to conduct a full inquiry. This includes the discretion to seek medical expert opinion if needed. But a full inquiry "does not require a consultative examination at government expense unless the record shows that such an examination is necessary to enable the ALJ to make the disability decision." *Landsaw v. Secretary of Health & Human Servs.,* 803 F.2d 211, 214 (6th Cir. 1986). Moreover, an ALJ fails to fully and fairly develop the record only when there is a significant omission or gap in the record. *Thomson v. Sullivan,* 933 F.2d 581, 586-88 (7th Cir. 1991); *see also Griffith v. Callahan,* 138 F.3d 1150, 1154 (7th Cir. 1998), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999)(holding that the ALJ had no obligation to order another consultative examination where he could rationally conclude that medical reports in the record provided the necessary information). Additionally, reviewing courts should respect the judgment of the Commissioner in determining how much evidence is necessary to decide a claim. *Luna v. Shalala,* 22 F.3d 687, 692 (7th Cir. 1994).

In this case, there is nothing to suggest ALJ Chwalibog was unable to evaluate the updated MCCC records or was without adequate evidence to decide Plaintiff's claim. The medical expert exams and reviews were recent. Plaintiff does not point to any worsening

demonstrated in the records that was overlooked by the ALJ. It would be impractical to mandate that all medical treatment records submitted by claimants must be reviewed by a medical expert, particularly in cases such as this where treatment is ongoing. This is precisely why an ALJ is vested with authority to evaluate medical proof, and the discretion to seek out additional proof or opinions when necessary to adjudicate a claim.

Plaintiff relies upon *Green v. Apfel,* 204 F.3d 780 (7th Cir. 2000). However, in that case the court concluded the ALJ abused his discretion in not summoning a medical expert to analyze conflicting test results, instead interpreting such test results himself and thereby impermissibly "playing doctor." That is not the case here. There were a number of medical experts already involved in examining and reviewing Plaintiff's mental and physical impairments who offered opinions. The ALJ's review of updated mental health progress notes to determine if recent treatment altered the status quo by, for example, adding diagnoses or identifying further limitations or restrictions is appropriate. Further expert review was not necessary to fully and fairly evaluate Plaintiff's claim, and requiring it simply as a matter of course places form over substance.

### III. CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #9) is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #10) is hereby **GRANTED**.

A judgment affirming this matter will be entered contemporaneously herewith.

Dated this 30th day of September, 2005.



Signed By:
*David L. Bunning*  DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\7-04-236-AdamsMOO.wpd